RICHARD S. GREENE IV
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C.  20044-7611
Richard.greene@usdoj.gov

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# NEWARK VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PUBLIC SERVICE ELECTRIC AND GAS ) <br> COMPANY ) <br> ) <br> and ) <br> ) <br> CONSOLIDATED EDISON COMPANY ) <br> OF NEW YORK, INC., ) <br> ) <br> Defendants. ) <br> ) | Civil No. 20-10850 |

## COMPLAINT

United States of America, by and through the undersigned attorneys, by the authority of the Attorney General of the United States and at the request of and on behalf of the United States Coast Guard (USCG), files this complaint and alleges the following:

## NATURE OF THE ACTION

1. This is a civil action brought under Section 1002 of the Oil Pollution Act (OPA), 33 U.S.C. § 2702, and under Section 311(b)(7) of the Clean Water Act (CWA), 33 U.S.C. §

1

1321(b)(7). In this action, the United States seeks to recover the removal costs incurred in response to the discharge of dielectric fluid from an electric transmission line into the Hudson River near the Sixth Street Pier located at the Newport Marina in Jersey City, New Jersey and to secure judicial civil penalties.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action under Section 1017(b) of OPA, 33 U.S.C. § 2717(b), Section 311(b)(7)(E), (e), and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E), (e), (n), and 28 U.S.C. §§ 1331, 1345, and 1355.

3.      Authority to bring this action is vested in the United States Department of Justice under Section 1015(c) of OPA, 33 U.S.C. § 2715(c), and 28 U.S.C. §§ 516 and 519.

4.      Venue is proper in this District under Section 1017(b) of OPA, 33 U.S.C. § 2717(b), Section 311(b)(7)(E), (e), and (n) of the CWA, and 28 U.S.C. §§ 1391 and 1395(a), because the Defendants conduct business in this district and the response actions occurred in this district, and the removal costs sought in this action were incurred in this district.

## DEFENDANTS

5.      Defendant Public Service Electric and Gas (PSE&G) is a public utility organized and existing as a corporation under the laws of the State of New Jersey with its principal place of business located at 80 Park Plaza, Newark, New Jersey. PSE&G is engaged principally in the transmission of electricity and the distribution of electricity and natural gas in certain areas of New Jersey.

6.      Defendant Consolidated Edison Company of New York, Inc. (Con Edison) is a public utility organized and existing as a corporation under the laws of the State of New York

with its principal place of business located at 4 Irving Place, New York, New York. Con Edison is engaged principally in the transmission of electricity and the distribution of electricity through much of New York City and Westchester County.

7. PSE&G and Con Edison (collectively referred to as "Defendants") are each a "person" within the meaning of Section 1001(27) of OPA, 33 U.S.C. § 2701(27) and within the meaning of Section 311(a)(7) of CWA , 33 U.S.C. 1321(a)(7).

## STATUTORY BACKGROUND

### Section 1002 of the Oil Pollution Act
### (Liability for Removal Costs)

8. Section 1002(a) of OPA, 33 U.S.C. § 2702(a), provides:

> Notwithstanding any other provision or rule of law . . . each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) of this section that result from such incident.

9. "Discharge" is defined in Section 1001(7) of OPA, 33 U.S.C. § 2701(7), as "any emission (other than natural seepage), intentional or unintentional, and includes, but is not limited to, spilling, leaking, pumping, pouring, emitting, emptying, or dumping."

10. "Facility" is defined in Section 1001(9) of OPA, 33 U.S.C. § 2701(9), as:

> any structure, group of structures, equipment, or device (other than a vessel) which is used for one or more of the following purposes: exploring for, drilling for, producing, storing, handling, transferring, processing, or transporting oil. This term includes any motor vehicle, rolling stock, or pipeline used for one or more of these purposes.

11. "Navigable waters" is defined in Section 1001(21), 33 U.S.C. § 2701(21), as "the waters of the United States, including the territorial sea."

12. "Oil" is defined in Section 1001(23) of OPA, 33 U.S.C. § 2701(23), to include:

oil of any kind or in any form, including petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil, but does not include any substance which is specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of section 101(14) of the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. § 9601) and which is subject to the provisions of that Act . . .

13. The terms "remove" and "removal" are defined in Section 1001(30) of OPA, 33 U.S.C. § 2701(30), as "containment and removal of oil or a hazardous substance from water and shorelines or the taking of other actions as may be necessary to minimize or mitigate damage to the public health or welfare, including, but not limited to, fish, shellfish, wildlife, and public and private property, shorelines, and beaches."

14. "Removal costs" are defined in Section 1001(31) of OPA, 33 U.S.C. § 2701(31), to include "the costs of removal that are incurred after a discharge of oil has occurred."

15. In the case of an onshore facility, "responsible party" is defined in Section 1001(32)(B) of OPA, 33 U.S.C. § 2701(32)(B), as "any person owning or operating the facility…"

16. An "onshore facility" is defined in Section 1001(24), 33 U.S.C. § 2701(24), as "any facility…of any kind located in, on, or under, any land within the United States other than submerged land."

17. Section 1002(b)(1)(A) of OPA, 33 U.S.C. § 2702(b)(1)(A), provides that the removal costs for which responsible parties are liable under OPA include "all removal costs incurred by the United States, a State, or an Indian tribe under subsection (c) . . . of section 1321 of this title."

18. Federal oil spill removal actions may be financed through the Oil Spill Liability Trust Fund (Spill Fund). *See* 26 U.S.C. §§ 4611 and 9509. Under OPA Section 1012(a), 33

U.S.C. § 2712(a), the Spill Fund can be used, *inter alia,* for the payment of federal and state removal costs; certain claims against the Spill Fund related to uncompensated removal costs; and certain federal administrative, operational and personnel costs and expenses under OPA. The Spill Fund is administered by the USCG National Pollution Funds Center.

## Section 311 of the Clean Water Act
## (Unlawful Discharges of Oil or Hazardous Substances)

19. Section 311(b)(3) of the CWA prohibits the "discharge of oil or hazardous substances (i) into or upon the navigable waters of the United States [and] adjoining shorelines, . . ., in such quantities as may be harmful as determined by the President under paragraph (4) of . . . subsection [311(b) of the CWA]."

20. Section 311(b)(4) of the CWA authorizes the President to determine the quantities of oil and hazardous substances the discharge of which "may be harmful to the public health or welfare or the environment of the United States, including but not limited to fish, shellfish, wildlife, and public and private property, shorelines and beaches." 33 U.S.C. § 1321(b)(4).

21. "Oil" is defined under Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1), to include "oil of any kind or in any form, including, but not limited to, petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil."

22. "Discharge" is defined under Section 311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2), to include:

> any spilling, leaking, pumping, pouring, emitting, emptying or dumping, but excludes (A) discharges in compliance with a permit under section 1342 of this title, (B) discharges resulting from circumstances identified and reviewed and made a part of a public record with respect to a permit issued or modified under section 1342 of this title, and subject to a condition in such permit, [sic] (C) continuous or anticipated intermittent discharges from a point source, identified in a permit or permit application under section 1342 of this title, which are caused by

events occurring within the scope of relevant operating or treatment systems, and (D) discharges incidental to mechanical removal authorized by the President under subsection (c) of this section.

23. "Navigable waters" is defined under Section 311 of the CWA, 33 U.S.C. § 1321(b)(3), as "waters of the United States, including the territorial seas." Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

24. The President's authority under Section 311(b)(4) of the CWA, 33 U.S.C. § 1321(b)(4) has been delegated to U.S. Environmental Protection Agency (EPA). Under the authority granted in the CWA, EPA has promulgated regulations that define quantities of oil that "may be harmful" to include quantities sufficient to "[c]ause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines." 40 C.F.R. § 110.3.

25. Section 311(b)(7)(A) of the CWA provides that "[a]ny person who is the owner, operator, or person in charge of any . . . onshore facility . . . from which oil . . . is discharged in violation of paragraph (3) [of Section 311(b)], shall be subject to a civil penalty." 33 U.S.C. § 1321(b)(7)(A).

26. "Onshore facility" under Section 311 of the CWA, 33 U.S.C. § 1321, refers to "any facility . . . of any kind located in, on, or under, any land within the United States other than submerged land." 33 U.S.C. § 1321(a)(10).

27. Under Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), any person who is an owner or operator of a facility from which oil discharged in violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), are subject to civil penalties. During the time period applicable to the discharges described in this Complaint, Section 311(b)(7)(A) of the

CWA, 33 U.S.C. § 1321(b)(7)(A), together with the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461, and 40 C.F.R. § 19.4 provides for civil penalties of up to $48,192 per day of violation or an amount up to $1,928 per barrel discharged, or if the violation resulted from gross negligence or willful misconduct, up to $192,768 per day of violation or an amount up to $5,783 per barrel discharged under Section 311(b)(7)(D), 33 U.S.C. § 1321(b)(7)(D).

28. Under Section 311(s) of the CWA, 33 U.S.C. § 1321(s), amounts received by the United States for actions under Section 311 shall be deposited in the "Oil Spill Liability Trust Fund" established under 26 U.S.C. § 9509 to, *inter alia*, fund cleanups of future discharges and substantial threats of discharges of oil.

## GENERAL FACTUAL ALLEGATIONS

Site Background

29. The Facility consists of two electrical substations, the Farragut Substation and the Hudson Switching Station, that are connected by two 345-kilovolt (kV) electric cables that are commonly referred to as the B3402 and C3403 Cables (hereinafter referred to together as "the Cables").

30. The Farragut Substation (Farragut Substation) is located at 12 Gold St., Brooklyn, New York and the Hudson Switching Station (Hudson Substation), also referred to as the Hudson Generating Station, is located along Van Keuren Ave. in Jersey City, New Jersey.

31. The Cables carry electricity from New Jersey to New York City through approximately seven miles of pipes that travel overland from PSE&G's Hudson Substation under

the Hudson River, overland through Manhattan, and then under the East River to Con Edison's Farragut Substation.

32. The portion of the Cables that are the subject of this Complaint are located under the seabed in the Newport Marina in Jersey City, New Jersey and run parallel to the Sixth Street Pier in Jersey City.

33. The pipes housing the Cables are steel with a 10-inch diameter and are generally encased in coal tar except for welding joints, which are covered in concrete. The portion of the pipes under the Hudson River are buried under approximately fifteen feet of sediment.

34. The Farragut and Hudson Substations both have storage tanks attached to each of the Cables that store and feed dielectric fluid into the pipes.

35. The Farragut and Hudson Substations maintain the dielectric fluid in the pipes under pressure to insulate, cool, and protect the Cables against corrosion.

36. Con Edison owns and operates the Farragut Substation.

37. PSE&G owns and operates the Hudson Substation.

38. Under an agreement between the Defendants, Con Edison and PSE&G jointly own and operate the Cables.

39. Under an agreement between the Defendants, PSE&G maintains ownership of the Cables from their connection to the Hudson Substation up to the New Jersey state line in the Hudson River.

40. Under an agreement between the Defendants, Con Edison maintains ownership of the Cables from their connection to the Farragut Substation up to the New York state line in the Hudson River.

41. Under an agreement between the Defendants, Con Edison is obligated to maintain the entire length of the Cables.

Cleanup Activities to Address the Discharge of Dielectric Fluid

42. On or about October 3, 2016, a discharge of dielectric fluid into the Hudson River from the B3402 Cable occurred near the Newport Marina and Yacht Club located at 500 Washington Blvd., Jersey City, New Jersey.

43. On October 3, 2016, the USCG, the Defendants, and the New Jersey Department of Environmental Protection (NJDEP) responded to the discharge.

44. By October 18, 2016, the USCG initiated a Unified Command to coordinate response efforts to address the discharge of dielectric fluid. The Unified Command consisted of the USCG, the Defendants, the NJDEP, and Newport Associates Development Company (NADC). NADC owns the portion of the seabed where the Cables are located as well as the Sixth Street Pier.

45. On November 10, 2016 and November 17, 2016, the USCG issued PSE&G and Con Edison, respectively, an administrative order for the discharge of dielectric fluid into the Hudson River. As part of the order, the United States Coast Guard determined the discharge of dielectric fluid presented an imminent and substantial threat to the environment and that the discharge was of a harmful quantity. The orders required the Defendants to respond to the discharge and work with the USCG to resolve the nature of the discharge.

46. Under the direction of the Unified Command, the Defendants conducted response activities to locate the discharge of dielectric fluid, install a permanent clamp on a weld joint on the B3402 Cable where dielectric fluid was discharging into the Hudson River, and recover

dielectric fluid trapped in the sediments surrounding the Cables. The Defendants also partially drained the dielectric fluid from both the B3402 and C3403 Cables under the supervision of the Unified Command on or about February 14-16, 2018.

47. Over the course of the response action, a sheen of dielectric fluid was plainly visible on the surface of the water above the location of the discharge.

48. As a result of the leak, at least 1,687 gallons of dielectric fluid discharged into the Hudson River.

49. On or about August 2, 2018, the response action was completed and the United States demobilized from the Site.

50. As of June 8, 2018, the Defendants have reimbursed the United States $4,360,816.88 in removal costs and interest that were incurred in connection with the discharge of dielectric fluid from the B3402 Cable.

51. As of the filing of this Complaint, the United States has still has at least $9,651,811.42 in unreimbursed removal costs that were incurred in connection with the discharge of dielectric fluid from the B3402 Cable.

**FIRST CLAIM FOR RELIEF**

**Sections 1002 and 1017 of the Oil Pollution Act, 33 U.S.C. §§ 2702, 2717**

52. The preceding paragraphs are incorporated herein.

53. The Hudson River is a "navigable water of the United States," as defined in Section 1001(21) of 33 U.S.C. § 2701(21).

54. The dielectric fluid that leaked from the B3402 Cable into the Hudson River is "oil" within the meaning of Section 1001(23) of 33 U.S.C. § 2701(23).

55. The leak of dielectric fluid into the Hudson River from the B3402 Cable is a "discharge" within the meaning of Section 1001(7) of 33 U.S.C. § 2701(7).

56. The Farragut substation, the Hudson substation, and the B3402 Cable together are a "facility" within the meaning of Section 1001(9) of 33 U.S.C. § 2701(9).

57. The Farragut substation, the Hudson substation, and the B3402 Cable together are an "onshore facility" within the meaning of Section 1001(24) of 33 U.S.C. § 2701(24).

58. Each Defendant is a "responsible party" within the meaning of Section 1001(32) of 33 U.S.C. § 2701(32).

59. Each Defendant is an "owner" or "operator" of the B3402 Cable within the meaning of Section 1001(26) of 33 U.S.C. § 2701(26).

60. As a result of the discharge of dielectric fluid from the B3402 Cable, the United States has incurred and paid removal costs within the meaning of Section 1001(31) of OPA, 33 U.S.C. § 2701(31).

61. Presently, the Defendants have failed to reimburse the Spill Fund $9,651,811.42 of removal costs the United States incurred in connection with the discharge of dielectric fluid from the B3402 Cable.

62. As owners and operators of the B3402 Cable, the Defendants are jointly and severally liable for reimbursing the Spill Fund for all of the removal costs the United States incurred in connection with the discharge of dielectric fluid from the B3402 Cable, without regard to any limitations on liability.

63. Under Section 1017(f)(2) of OPA, 33 U.S.C. § 2717(f)(2), and the Declaratory Judgment Act, 28 U.S.C. § 2201, the United States is entitled to a declaratory judgment on the liability of the Defendants for these removal costs that will be binding in any subsequent action or actions to recover removal costs.

## **SECOND CLAIM FOR RELIEF**

**Section 311 of the Clean Water Act, 33 U.S.C. § 1321**

64. The preceding paragraphs are incorporated herein.

65. Each Defendant is a "person" within the meaning of Section 311(a)(7) of the CWA, 33 U.S.C. § 1321(a)(7).

66. Defendant PSE&G is an "owner," "operator," and a "person in charge" of the Hudson Substation and the sections of the B3402 Cable located within New Jersey, including the section of the B3402 Cable from which dielectric fluid discharged into the Hudson River within the meaning of Sections 311(a)(6) and 311(b)(7) of the CWA, 33 U.S.C. §§ 1321(a)(6), (b)(7).

67. Defendant Con Edison is an "owner" or "operator" or a "person in charge" of the Farragut Substation and the B3402 Cable, including the section of the B3402 Cable from which dielectric fluid discharged into the Hudson River within the meaning of Sections 311(a)(6) and 311(b)(7) of the CWA, 33 U.S.C. §§ 1321(a)(6), (b)(7).

68. Con Edison's Farragut Substation, PSE&G's Hudson Substation, and the B3402 Cable, including the section of the B3402 Cable from which dielectric fluid discharged into the Hudson River, is an "onshore facility" within the meaning of Section 311(a)(10) of the CWA, 33 U.S.C. § 1321(a)(10).

69. The dielectric fluid that discharged into the Hudson River is "oil" within the meaning of Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1).

70. The leaking of dielectric fluid from the Defendants' Cable into the Hudson River constitutes a "discharge" of oil within the meaning of Section 311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2).

71. The discharge of dielectric fluid was into or upon the navigable waters of the United States within the meaning of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

72. The discharge of dielectric fluid caused a sheen upon and discoloration of water surfaces and contaminated the sediment in the area of the Cables. Thus, the quantities discharged were in quantities "as may be harmful" within the meaning of Section 311(b)(3) and (4) of the CWA. 33 U.S.C. § 1321(b)(3), (4); 40 C.F.R. § 110.3.

73. The Defendants' dielectric fluid discharge violated Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

74. The Defendants are liable for civil penalties of up to $48,192 per day of violation or an amount up to $1,928 per barrel of dielectric fluid discharged under Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court:

    A.    Award judgment against the Defendants for the unreimbursed removal costs the United States has incurred, paid, or charged against the Oil Spill Liability Trust Fund as a result of the discharge of dielectric fluid from the B3402 Cable;

B. Enter a declaratory judgment under Section 1017(f)(2) of the OPA, 33 U.S.C. 2717(f)(2), finding the Defendants strictly liable for all removal costs that the United States hereafter pays in connection with discharges from the B3402 Cable without regard to any monetary limitations;

C. Enter judgment that the Defendants are liable to the United States for civil penalties under Section 311(b) of the Clean Water Act and assess civil penalties of up to $48,192 per day of violation or $1,928 per barrel of dielectric fluid discharged under Section 311(b)(7)(A);

D. Award the United States its costs of this action; and

E. Grant the United States such other relief as the Court deems just and proper.

Dated:                                             Respectfully submitted,

                                                   ELLEN M. MAHAN
                                                   Deputy Section Chief
                                                   United States Department of Justice
                                                   Environment and Natural Resources Division
                                                   Environmental Enforcement Section


Dated:                                             *s/ Richard S. Greene IV*
                                                   RICHARD S. GREENE IV
                                                   Trial Attorney
                                                   United States Department of Justice
                                                   Environment and Natural Resources Division
                                                   Environmental Enforcement Section
                                                   P.O. Box 7611
                                                   Washington, D.C. 20044
                                                   Tel: (202) 307-3967
                                                   Fax: (202) 514-0097
                                                   Email: richard.greene@usdoj.gov
                                                   Fed Bar (TN) #: 024450

        CRAIG CARPENITO
        United States Attorney
        District of New Jersey

        ALLAN URGENT
        Assistant United States Attorney
        District of New Jersey
        970 Broad Street, 7th Floor
        Newark, NJ 07102

Of Counsel:

LCDR SHANNON PRICE
Legal Counsel
U.S. Coast Guard
National Pollution Funds Center
2703 Martin Luther King Jr. Ave SE, Stop 7605
Washington, DC 20593-7605

HEATHER S. KENNEALY
Attorney Advisor
U.S. Coast Guard
Office of Claims and Litigation (CG-LCL)
2703 Martin Luther King, Jr. Ave., Stop 7213
Washington, DC 20593-7213

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | ☐ 362 Personal Injury - Medical Malpractice | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | | | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD
*Richard S. Greene IV*

**FOR OFFICE USE ONLY**

RECEIPT #　　AMOUNT　　APPLYING IFP　　JUDGE　　MAG. JUDGE